UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

BOBBY CHIN,

               Petitioner,

    -against-                             :  **REPORT AND RECOMMENDATION**

WILLIAM PHILLIPS, Superintendent Green    :  05 Civ. 0438 (LAP)(KNF)
Haven Correctional Facility,

               Respondent.
------------------------------------------------------------- X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Bobby Chin ("Chin"), proceeding pro se, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner alleges his confinement by the state of New York is unlawful because his rights to a fair trial and to confront the witnesses against him were violated when the trial court: (a) denied his request to place into evidence the criminal record of another suspect in the case; (b) permitted hearsay to be presented to the jury over his objection; and (c) elicited from a prosecution law enforcement witness, that she did not make any promises to the petitioner that might have induced him to confess falsely that he committed a homicide. Chin also contends that, in the circumstance of the instant case, his sentence is excessive.

The respondent opposes the petition. He maintains the petitioner's claims, that his constitutional rights were violated by the trial court's evidentiary rulings barring evidence about the criminal history of another suspect in the case and permitting hearsay to be presented to the

1

jury, are procedurally defaulted and, since the petitioner has failed to show cause for his default and prejudice resulting from it, or that the failure by the court to review the claims made in the instant application for the writ will result in a fundamental miscarriage of justice, Chin is not entitled to habeas corpus relief. Furthermore, according to the respondent, the petitioner's claim, that he was prejudiced by the trial court's examination of a prosecution law enforcement witness is not a claim cognizable on federal habeas review and, in any event, is meritless. In addition, the respondent contends the sentence that was imposed on the petitioner does not implicate the Eighth Amendment and, therefore, does not warrant granting him habeas corpus relief. The petition is addressed below.

## II. BACKGROUND

Chin and Sherrie Lee ("S. Lee") had a five-year-long romantic relationship, and he hoped to marry her. Chin introduced S. Lee to his friends Wai Chung Ng ("Ng") and Wain Ming Lee ("W. Lee"). Beginning in February 1982, Chin and S. Lee invited Ng to join them on their dates frequently, because he was lonely and depressed. S. Lee and Ng began to spend time together without Chin and, eventually, they developed a romantic relationship.

In the summer of 1982, before she departed for college, S. Lee attempted to terminate her relationship with Chin, unsuccessfully. In November 1982, Chin confronted S. Lee with his suspicion that she was dating Ng. S. Lee, who still had strong feelings for Chin, denied, falsely, that a romantic relationship existed between her and Ng.

During her 1983 college spring break, S. Lee met with Chin; he asked her not to terminate their relationship. At that time, Chin displayed a firearm to S. Lee and told her if he learned she was seeing Ng, he would kill him.

On May 12, 1983, at approximately 9:00 p.m., Chin confronted Ng in the parking lot of the building where Ng lived, on the Lower East Side of Manhattan, about Ng's relationship to S. Lee. Chin shot Ng six times in the head and began to flee the scene on foot. As he did so, Chin discarded a black jacket that he was wearing. The jacket was later recovered by police officers. It contained sunglasses from which the police were able to obtain fingerprints. After Chin discarded the black jacket, he entered a parked automobile and continued to flee the scene by driving away.

A security officer observed a portion of the New Jersey license plate number on Chin's getaway car and provided it to the police. The day following the shooting, the automobile Chin used to effect his escape was located on a Manhattan street by detectives investigating Ng's death. Police personnel recovered fingerprints from the automobile. However, since Chin had no criminal history, the police could not compare his fingerprints with those found on the vehicle. The fingerprints of Chin's friend, W. Lee, who had a criminal history, were recovered from the automobile. Police officials learned later that the vehicle was registered to an individual whose sister had given it to W. Lee.

At some point, the active investigation of Ng's death ceased, and Chin relocated from New York. However, in December 1996, Detective Margie Yee ("Yee") reopened the investigation into Ng's death. After interviewing witnesses and learning that Chin was living in Arizona, Yee used a ruse to obtain Chin's fingerprints. She created a fictitious Federal Bureau of Investigation wanted poster for a robber who used the alias "Bobby." The wanted poster indicated that, if located, the robber's identity should be verified through fingerprints. In June 1997, Yee traveled to Arizona. She arranged for Phoenix police officers to confront Chin with

3

the wanted poster and to elicit his cooperation in the officers' attempt to determine whether Chin was the "Bobby" named in the wanted poster.

Phoenix police officers met with Chin, who agreed to accompany them to a police facility where his fingerprints could be taken. After Chin's fingerprints were obtained, Phoenix police officials communicated to Yee, incorrectly, that they did not match any of the fingerprints recovered from the vehicle Chin used on the night he shot Ng. Undeterred, Yee and another New York City detective, Thomas Barnes ("Barnes"), decided to question Chin about Ng's murder. During the interrogation session, Chin confessed to Yee and Barnes that he killed Ng. A subsequent comparison of Chin's fingerprints with those recovered from: (a) the sunglasses found in the jacket Chin had discarded on the night of the shooting; and (b) the automobile Chin used to effect his escape, after he shot Ng, resulted in a match.

Chin was indicted by a New York County grand jury for Ng's murder and proceeded to trial before a petit jury. During the trial, over the petitioner's objection, the court permitted the prosecution to establish that Yee reopened the investigation into Ng's death because the case had been brought to her attention by friends of the petitioner, who provided her with information pertinent to the case. The petitioner also objected to certain questions the trial court asked Yee concerning the circumstances of Chin's confession. Specifically, Chin objected to questions the trial court put to Yee to establish that she had not promised Chin anything that might have induced him to confess falsely to having shot Ng. Chin maintained that the trial court's questions showed judicial bias and warranted the court in declaring a mistrial. The petitioner also found objectionable, the trial court's decision to bar him from presenting evidence to the jury about W. Lee's prior criminal history, which included a conviction for possessing a weapon

during an incident where a person was fatally shot.

At the conclusion of the trial, Chin was convicted for murder in the second degree and was sentenced to an indeterminate term of 25 years to life imprisonment. Chin appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department. He asked that court to upset his conviction because his rights to a fair trial and to confront witnesses against him were infringed when: (i) the trial court refused to permit evidence of W. Lee's prior criminal history to be presented to the jury; and (ii) the trial court permitted the prosecution to elicit impermissible hearsay from Yee about her pre-investigation discussions with Chin's friends. He also alleged that the trial court deprived him of a fair trial and due process by eliciting evidence favorable to the prosecution during its questioning of Yee which, according to Chin, demonstrated that the trial court was biased against him. Chin also asked the court to consider whether the sentence imposed upon him was excessive.

The Appellate Division determined not to upset Chin's conviction. That court found the petitioner's claims, that he was constitutionally entitled to present evidence to the jury about W. Lee's criminal history and that his Confrontation Clause right was violated when the trial court permitted Yee to explain how she came to reopen the dormant Ng homicide investigation, were not preserved for appellate review. However, the court explained that if it reviewed these claims, on the merits, it would find that no constitutional violation occurred. The Appellate Division also found that the trial court's limited examination of Yee did not deprive Chin of a fair trial because: (1) the trial court's questions clarified an important issue and did not indicate to the jury that the trial court had an opinion about the case; and (2) the trial court gave the jury an appropriate curative instruction that prevented any prejudice to Chin. However, the Appellate

5

Division modified Chin's sentence, as a matter of discretion, in the interest of justice, to a term of 15 years to life imprisonment. See People v. Chin, 3 A.D.3d 427, 771 N.Y.S.2d 120 (App. Div. 1st Dep't 2004). On March 19, 2004, the New York Court of Appeals denied Chin's request for leave to appeal to that court. See People v. Chin, 2 N.Y.3d 738, 778 N.Y.S.2d 464 (2004). The instant petition followed.

## II. DISCUSSION

*Procedural Default*

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state-law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). A procedural default in a state court will bar federal habeas review where "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989) (citation omitted). Moreover, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of a federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (citations omitted).

Procedural default is typically an affirmative "'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" Trest v. Cain, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997) (citations omitted); see Gray v. Netherland, 518 U.S. 152, 165-66, 116 S. Ct. 2074, 2082 (1996); Day v. McDonough, 547 U.S. 198, __, 126

S. Ct. 1675, 1683 (2006). The party asserting an affirmative defense not only must plead it, but also generally bears the burden of proving it. See Drexel Burnham Lambert Group Inc. v. Galadari, 777 F.2d 877, 880 (2d Cir. 1985).

A state procedural rule is "independent" of the merits of a federal-law claim when the state court actually relies on the procedural bar as an independent basis for its disposition. See Harris, 489 U.S. at 260-61, 109 S. Ct. at 1042. The Appellate Division declined to review the petitioner's claims, that he was constitutionally entitled to present evidence at the trial of another suspect's criminal history and that the trial court violated the Confrontation Clause by admitting hearsay evidence into the trial record, because those claims were "unpreserved" for judicial review. Although the Appellate Division indicated how it would dispose of these federal-law claims on the merits if they had been preserved for appellate review, it rested its decision on the petitioner's failure to comply with New York's contemporaneous-objection rule, a procedural ground that is independent of these federal-law claims. However, "[b]efore accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default." Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003).

The Supreme Court has held consistently that "'the question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.'" See Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987 [1988]). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" and "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." Hathorn v. Lovorn, 457 U.S. 255, 262-63, 102 S. Ct. 2421,

7

2426 (1982) (citing Barr v. City of Columbia, 378 U.S. 146, 149, 84 S. Ct. 1734, 1736 [1964]). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim[,]" save for "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885-86 (2002); see Cotto, 331 F.3d at 239-40.

A state contemporaneous-objection requirement violation is an adequate procedural ground for barring review of a claim in a federal habeas corpus proceeding, if it is established that at the time the procedural bar is applied: (1) "[the state] actually had a contemporaneous-objection requirement for claims such as [the petitioner] now advances;" and (2) "that this requirement was actually enforced by the state courts themselves." Washington v. Harris, 650 F.2d 447, 451 (2d Cir. 1981), cert. denied 455 U.S. 951, 102 S. Ct. 1455 (1982); see Ford v. Georgia, 498 U.S. 411, 424, 111 S. Ct. 850, 857-58 (1991). "Though a rule in general terms might be considered 'firmly established and regularly followed,' such a rule considered in the specific circumstances of a case might be inadequate to preclude federal habeas review." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006).

The Second Circuit Court of Appeals has explained that, in determining whether a state procedural rule violation is an adequate ground on which to bar review of a federal claim in a habeas corpus proceeding, "the question [that must be answered] is whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto, 331 F.3d at 240 (citation omitted);

8

see Lee, 534 U.S. at 382, 122 S. Ct. at 889 (although the procedural rules may not have been novel, their application to the facts was). "The Supreme Court has noted that the contemporaneous objection rule rests on 'the general principle that an objection which is ample and timely to bring an alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review.'" Cotto, 331 F.3d at 242 (quoting Osborne v. Ohio, 495 U.S. 103, 125, 110 S. Ct. 1691, 1704-05 [1990]). In the habeas corpus context, three guiding factors are considered when determining the adequacy of a state procedural rule: (1) whether the procedural violation actually affected the trial court's ruling; (2) whether state case law indicated that compliance with the procedural rule was required in the specific circumstance presented; and (3) whether the defendant complied substantially with the rule, in light of the realities of trial. See id. at 240.

Here, the respondent contends the petitioner has defaulted procedurally on his claims that the trial court's evidentiary rulings violated his constitutional rights because the Appellate Division relied on an independent and adequate state-law ground - - failure to make a contemporaneous objection - - when it found the petitioner's claims unpreserved for appellate review. More specifically, the respondent asserts, the "explicit invocation of the procedural bar" is an adequate state ground because "[i]n finding that the claim was unpreserved, the First Department applied New York's 'firmly established and regularly followed' rule. . . . Therefore, the First Department's finding of procedural default rested on an 'adequate,' that is a 'fair and substantial' basis in state law" and the "Court should defer to New York's 'consistent application' of its contemporaneous objection rule, and not consider the merits of petitioner's

9

unpreserved claim."

Relying on Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999) to buttress his contention that the procedural ground used to deny Chin relief was adequate to support the Appellate Division's judgment, the respondent equates, erroneously, the term "adequate" with the phrase "fair or substantial basis in state law," and urges the Court to give deference to the Appellate Division's judgment. The respondent's reliance on Garcia is misplaced. The Second Circuit Court of Appeals has rejected the "fair or substantial basis in state law" approach to determining the adequacy of the state ground on which a petitioner's federal-law claim was resolved. The Second Circuit has explained that the relevant inquiry is not whether the state court's decision has a "fair or substantial basis in state law;" rather, the relevant inquiry is, as indicated above, "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case." Cotto, 331 F.3d at 240 n.11. The court explained further that the "fair or substantial basis in state law" formulation was not meant to "prescrib[e] an additional layer of deference on top of the independent and adequate state grounds doctrine." Id.

The respondent points to only one New York case, People v. Luperon, 85 N.Y.2d 71, 623 N.Y.S.2d 735 (1995), for the proposition that the Appellate Division's application of the contemporaneous-objection rule was "firmly established and regularly followed." However, the New York Court of Appeals' general statement that the basic preservation "rules require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error," id. at 78, does not establish that the

preservation rule, considered in the specific circumstance of the case at bar, is adequate to preclude federal habeas review. A conclusory assertion, that a preservation rule is "firmly established and regularly followed," without a concomitant showing of the application of the rule in the specific circumstances of the case presented, does not satisfy the respondent's burden of proving his affirmative defense. Therefore, the Court is not precluded from reviewing the petitioner's constitutional violation claims, that are premised on evidentiary rulings made by the trial court. The merits of these claims, along with Chin's other claims, that were adjudicated by the state court on the merits, are analyzed below, in accordance with the standards outlined in the relevant provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

*AEDPA Standard*

Pursuant to AEDPA, a federal court may grant a writ of habeas corpus where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. See 28 U.S.C. § 2254 (d). The Supreme Court has interpreted "the contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) as having independent meaning. See Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519 (2000). A state-court decision is "contrary to" Supreme Court's precedent: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court.

Id. at 405, 120 S. Ct. at 1519. A state-court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

In support of his habeas corpus petition, Chin has submitted a copy of the appellate brief his counsel prepared for and presented to the Appellate Division. Chin has failed to identify how the Appellate Division's decision on his constitutional claims concerning: (a) the trial court's evidentiary rulings; (b) the trial court's examination of a prosecution law enforcement witness; and (c) the excessive nature of his sentence, was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court. Furthermore, Chin has failed to show that the Appellate Division's decision on these claims was based on an unreasonable determination of the facts in light of the evidence presented at his trial. Moreover, Chin has not presented any evidence to the Court that rebuts the presumption of correctness that must be accorded to the factual findings made on his claims by the state court. See 28 U.S.C. § 2254(e)(1). Consequently, the Court finds that Chin has not met the burdens imposed on him by 28 U.S.C. § 2254 and, therefore, he is not entitled to habeas corpus relief.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the petitioner's application for a writ of habeas corpus be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 1320, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
April 13, 2007

Respectfully submitted,

_Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Bobby Chin  
Susan Gliner, Esq.